■ In the Matter of the Claim of ROBERT JOSLYN, Deceased, Respondent, v ONEIDA COUNTY SHERIFF'S DEPARTMENT, Appellant, and SPECIAL DISABILITY FUND, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [700 NYS2d 548] —Peters, J. P. Appeals (1) from a decision of the Workers' Compensation Board, filed September 29, 1997, which ruled that decedent sustained a compensable injury and awarded workers' compensation benefits, and (2) from a decision of said Board, filed September 15, 1998, which ruled that decedent's death was compensable and awarded workers' compensation death benefits.

Upon awaking with chest pains on June 25, 1992, decedent was transported to the emergency room where he was diagnosed with a severe myocardial infarction. He thereafter suffered numerous cardiac arrests which resulted in severe brain damage. For the following four years, he lived in a neurovegetative state until his death from congestive heart failure in September 1996.

Prior to his heart attack, decedent was employed by the Oneida County Sheriff's Department (hereinafter the employer) as an Operations Lieutenant at the local jail. In such capacity, he had administrative and supervisory duties for approximately 300 prisoners and a staff of 200. Testimony adduced at various hearings revealed that in recent years, the jail had experienced, among other problems, increases in the prisoner population compounded by staff shortages, inmate and staff assaults, suicides and concerns of contracting HIV, tuberculosis and hepatitis. Although decedent had worked the day shift for the last 11 years, approximately three weeks prior to his heart attack he was asked by Sheriff Gerald Washburn, who had held that position since January 1991, whether he would volunteer to switch to the "afternoon" shift, comprised of an eight-hour period between 6:00 P.M. and 4:00 A.M. While couched as a nonmandatory assignment, decedent believed that he had no choice but to comply; he accepted and began, at 47 years old, to work from 7:00 P.M. to 3:00 A.M.

Decedent had great difficulty adjusting to the shift change as documented in the affidavit and testimony of both his wife who had, in the past, held a Deputy Sheriff's position in the jail, and his direct supervisor and friend, Captain Daniel Middaugh. Decedent experienced difficulty sleeping, was complaining of headaches, neck pain and loss of appetite, was irritable and withdrawn and "looked terrible". While complaints were also communicated to the psychiatric social worker stationed at the jail, Barbara Lee Pflender-Ruiz, no such complaints were expressed to Washburn.

Subsequent to the heart attack, a workers' compensation claim was filed on decedent's behalf (hereinafter the lifetime claim). In connection therewith, medical testimony was elicited from decedent's attending physician, Antonio Di Marco, who opined that the stress caused by the change in shifts was the most important precipitating factor for decedent's heart attack. A contrary report by John Walters, a physician who examined decedent in 1993, opined that the heart attack was precipitated not only by the stress induced by the change in shift but also by smoking and family history. Without a history of psychological or psychiatric involvement, he opined that there was no evidence to confirm chronic stress, as opposed to acute stress, which did not, in his view, trigger a myocardial infarction.

The Workers' Compensation Law Judge (hereinafter WCLJ) determined that benefits should be awarded since an accident, notice and causal relationship had been established. Upon application for review by a panel of the Workers' Compensation Board, the claim was restored for testimony by Walters. At a hearing, Walters reiterated the conclusions made in his prior report. The Board thereafter directed the case to be reviewed by an impartial cardiologist to render an opinion on the issue of causation.

Stephen Nash, the Board's impartial medical specialist, reported and testified that although it was likely that decedent would have eventually suffered from a heart attack without the shift change, the stress resulting from the shift change was a contributing factor. Based upon this testimony, as well as that of Middaugh and Pflender-Ruiz, the Board upheld the decision of the WCLJ, prompting this appeal.

Prior to the Board's decision on the lifetime claim, decedent's wife filed a claim for compensation based upon his death (hereinafter the death claim). Although upheld by the WCLJ, the employer conceded in its application for Board review that the outcome of the death claim was dependent upon the lifetime claim. The Board affirmed the decision of the WCLJ on the death claim based on the record of the lifetime claim as well as a letter from Vincent Lo, decedent's primary care physician in the last year of his life. Lo indicated that the 1992 heart attack was a significant contributing cause to decedent's death.

On appeal, the employer contends that there was insufficient proof that decedent's heart attack was an "accident" within the meaning of the Workers' Compensation Law or that the change in his employment was a contributing cause. We disagree. A

viable claim may be premised on work-related stress, a factual issue for the Board to decide. As its determination is considered conclusive if supported by substantial evidence (*see, Matter of Black v Metropolitan Tobacco*, 71 NY2d 989, 990; *Matter of Gates v McBride Transp.*, 60 NY2d 670, 671; *Matter of Marillo v Cantalician Ctr. for Learning*, 263 AD2d 719; *Matter of Kaliski v Fairchild Republic Co.*, 151 AD2d 867, 868, *affd* 76 NY2d 1002), we find ample testimony supporting the determination rendered.

The record details the stressful working conditions under which decedent was required to function and how these conditions, coupled with the shift change, manifested in physical symptoms. Medical testimony of Di Marco and Nash unequivocally supported these lay observations, resulting in their conclusion that the change in shift after 11 years was stressful and that such stress was a significant contributing cause of decedent's heart attack. From this cumulative testimony, we find that the Board had a substantial evidentiary basis upon which to conclude that the fatal heart attack was causally related to decedent's employment, despite the existence of other contributing conditions (*see, Matter of Black v Metropolitan Tobacco, supra; Matter of Masi v Town of Clarkstown*, 260 AD2d 889; *Matter of Connelly v Connelly Assocs.*, 241 AD2d 572, *lv denied* 90 NY2d 810; *Matter of Ayers v Tioga County Sheriff's Dept.*, 240 AD2d 819).

The decisions of the Board are therefore affirmed.

Spain, Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the decisions are affirmed, without costs.